Filed 12/29/23  P. v. Martinez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SALVADOR MENDOZA MARTINEZ,<br><br>    Defendant and Appellant. | E080278<br><br>(Super.Ct.No. CR65564)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Thomas E. Kelly, Judge.  Affirmed.

Tracy A. Rogers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Alan L. Amann and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant, Salvador M. Martinez, appeals from a judgment summarily denying his petition for resentencing filed pursuant to Penal Code[1] section 1170.95 (currently renumbered as § 1172.6). Defendant was convicted in 1995 of one count of second degree murder and two counts of attempted murder, with enhancements, resulting in a prison sentence of 55 years to life plus 4 months.

On appeal, defendant argues (1) that although the trial court did not instruct on the natural and probable consequences doctrine, the prosecutor's closing argument focused on that theory of guilt; and (2) he was deprived of effective assistance of counsel for failing to present the prosecutor's closing argument in litigating the petition for resentencing. We affirm.

## BACKGROUND

We take the background facts from our original opinion in the direct appeal, *People v. Martinez,* filed March 12, 1998 as an unpublished opinion in case No. E019490:

"Cowperthwaite, Roach, and Guild lived on Lake Crest Drive in the City of Lake Elsinore. Around midnight on August 19, 1995, they were outside while attending a party. All three had been drinking, and Cowperthwaite and Roach may have been intoxicated.

"A car came down the street at about 50 or 55 miles per hour. One of the residents yelled at the driver to slow down. The car stopped and backed up. Cowperthwaite,

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

2

Roach, and Guild went to the car and again told the driver, later identified as defendant, to slow down. Besides defendant, there was at least one passenger in the car, and there may have been another.

"Defendant asked if the residents were police officers. The residents said they were not. Profanities were exchanged, and defendant drove off. One of the residents probably '"flipped off"' the car. Someone, probably Roach, threw a beer can at the car as well.

"The car stopped again and defendant came out. Roach charged defendant to scare him off, saying, '"Get back in your car and get out of here,"' and pushed defendant back toward the car. Defendant threw a punch but missed Roach. Roach hit defendant on the side of the head.

"Cowperthwaite then grabbed defendant. Roach went to the other side of the car because a passenger was getting out. The passenger jumped out and pointed a gun at Roach. Roach started running back toward the driver's side, and saw Cowperthwaite come running by, toward the rear of the car.

"Guild saw defendant putting a clip in a gun. Defendant said, '"Have you ever seen one of these before?"' and pointed the gun toward Roach and Cowperthwaite. Roach stopped, put his hands up, and said, '"Don't do it."' Defendant shot Roach two times in the chest from about 10 feet away. Roach ran away but was shot again, in the back, and fell to the ground.

"Roach heard Cowperthwaite yelling and saw that he had been shot and fallen to the ground. The shots at Cowperthwaite came from defendant. Roach also heard Guild screaming, but did not see him shot. Roach heard and saw gunfire from both sides of the car.

"Guild was shot in the neck but did not see who shot him. According to Cowperthwaite's daughter Nicole, who was watching the incident, the driver shot Cowperthwaite and Roach, and the passenger shot Guild. However, Nicole also told an investigator before trial that the driver shot at all three residents.

"The car drove away rapidly and Roach got the license plate number. Cowperthwaite was taken to the hospital with three gunshot wounds and died from one of the wounds at 4:22 a.m. on September 20, 1995." (*People v. Martinez* (Mar. 12, 1998, E019490) [nonpub. opn.] pp. 3-4.)

"A jury convicted defendant of the second-degree murder of Robert Cowperthwaite and of the attempted murder of Michael Roach and Richard Guild. (Pen. Code, §§ 187, 664.) The jury found defendant personally used a firearm in the murder and in the attempted murder of Roach (Pen. Code, § 12022.5, subd. (a)), and personally inflicted great bodily injury on Roach. (Pen. Code, § 12022.7, subd. (a).) It also found defendant committed all three offenses for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members. (Pen. Code, § 186.22, subd. (b)(1).)

4

"The court sentenced defendant to fifty-five years, four months to life, consisting of: (1) for the murder, fifteen years to life plus the upper terms of ten years for the firearm use and three years for the gang enhancement; (2) for the attempted murder of Roach, the upper term of nine years plus the upper terms of ten years for the firearm use and three years for the gang enhancement, and three years for inflicting great bodily injury; and (3) for the attempted murder of Guild, two years and four months, representing one-third of the middle term of seven years." (*People v. Martinez, supra,* E019490 at pp. 1-2.)

On October 7, 2022, appellant filed a Petition for Resentencing pursuant to section 1170.95, now section 1172.6. The petition alleged that appellant was convicted of second degree murder pursuant to the natural and probable consequences doctrine or the second degree felony-murder doctrine and that he could not be so convicted after the recent amendments to section 188.

The trial court summarily denied the petition without issuing an order to show cause. Defendant timely appealed the court's order.

## DISCUSSION

1. *Defendant Failed to Make a Prima Facie Showing for Resentencing*

Defendant argues the order summarily denying his petition must be reversed because during closing argument, the prosecutor argued the applicability of the natural and probable consequences doctrine, presenting an invalid theory to the jury. He also argues

5

that because juries attach weight to the statements of the prosecutor, the prosecutor contributed to the guilty verdicts, especially the verdict as to count 2. We disagree.

First, any claim of prosecutorial misconduct in arguing the natural and probable consequences doctrine at the trial is not well taken. The record shows the trial court originally planned to instruct on the theory, but later, after closing arguments, decided not to give the instruction. Additionally, section 1172.6 "does not permit a petitioner to establish eligibility on the basis of alleged trial error." (*People v. DeHuff* (2021) 63 Cal.App.5th 428, 438.) "'The purpose of section [1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.'" (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947.)

Finally, the court did not instruct on the natural and probable consequences theory or felony murder. We must assume the jury followed the instructions. (*People v. Chhoun* (2021) 11 Cal.5th 1, 30, quoting *People v. Lindberg* (2008) 45 Cal.4th 1, 26.) The only conviction in which defendant was not the shooter was count 2, but in that count, the defendant was found guilty of attempted murder, signifying defendant aided and abetted the attempted murder with specific intent to kill. As we will discuss, the nature of defendant's convictions rendered him ineligible for resentencing as a matter of law, so even if there had been error, it was harmless beyond a reasonable doubt.

6

A. *Statutory principles applicable to review of summarily denied resentencing petitions*

We begin by outlining the general principles governing review of summary denials of petitions for resentencing. Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) amended the felony-murder rule by adding section 189, subdivision (e). It provides that a participant in the qualifying felony is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. (See *People v. Gentile* (2020) 10 Cal.5th 830, 842.)

The Legislature also amended the natural and probable consequences doctrine by amending section 188, subdivision (a)(3), which now states that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The amendments included a procedure by which those convicted of murder can seek retroactive relief if the changes in law would affect their previously sustained convictions. (§1170.95 [renumbered as §1172.6]; *People v. Saibu* (2022) 81 Cal.App.5th709, 731.)

Effective January 1, 2022, the ameliorative statutory scheme was further amended to clarify that the new procedures applied also to persons convicted of attempted murder or manslaughter under a theory of felony murder and the natural and probable consequences doctrine, and permitted the same relief as those persons convicted of murder under the same theories. (Sen. Bill No. 775 (2021-2022 Reg. Sess.) eff. Jan. 1, 2022; *People v.*

7

*Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388; see also *People v. Sanchez* (2022) 75 Cal.App.5th 191, 193; *People v. Porter* (2022) 73 Cal.App. 5th 644, 651-652.)

Under section 1172.6, a person convicted of felony murder or murder based on the natural and probable consequences doctrine may petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of these statutory changes. (See *People v. Lewis* (2021) 11 Cal.5th 952, 959-960 (*Lewis*).)

A person may seek resentencing by filing a section 1172.6 petition. (§ 1172.6, subd. (a).) Upon such filing, the court must "determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).) The petitioner is entitled to relief if he alleges, as relevant here, (1) "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine," (2) he "accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of . . . attempted murder," and (3) he "could not presently be convicted of . . . attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

The prima facie inquiry is limited. (*Lewis, supra*, 11 Cal.5th at p. 971.) The court must accept the petitioner's allegations as true and "should not make credibility

8

determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id.* at p. 974.) "If the petition and record in the case establish conclusively that the [petitioner] is ineligible for relief, the trial court may dismiss the petition" as a matter of law. (*People v. Strong* (2022) 13 Cal.5th 698, 708, *In re Serrano* (1995) 10 Cal.4th 447, 456.)

"However, if the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,'" then "the court is justified in making a credibility determination adverse to the petitioner." (*Lewis, supra*, 11 Cal.5th at p. 971.)

Thus, at the prima facie stage, the trial court's inquiry "'is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime).' [Citation.]" (*People v. Pacheco* (2022) 76 Cal.App.5th 118, 125.) "If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief . . . , then the trial court should issue an order to show cause." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980 [overruled on a different point in *Lewis, supra*, 11 Cal.5th at p. 963].)

"We independently review a trial court's determination of whether a petitioner has made a prima facie showing." (*People v. Patton* (2023) 89 Cal.App.5th 649, 656.) Whether the petitioner has made a prima facie showing of entitlement to relief under

9

section 1172.6 is a "'purely legal conclusion, which we review de novo.' [Citation.]" (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

B. *Analysis*

The defendant's focus on the prosecutor's closing argument is misplaced. We recognize that in considering whether defendant established a prima facie showing, the court can consider the record of conviction, including the closing arguments of counsel. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 13, citing *People v. Ervin*, *supra*, 72 Cal.App.5th at pp. 99, 102.) We also note that the only references to the natural and probable consequences doctrine were related to the shooting of Richard Guild, the victim in count 2, who presumably was shot by the passenger.

Thus, there is no argument that defendant was convicted on counts 1 and 3 under a now invalid theory. Further, the fact defendant was convicted of attempted murder as to count 2 reveals the jury did not consider the natural and probable consequences theory of guilt. The augmented record confirms that after arguments, and after defense counsel objected to CALJIC 3.02 for want of a target offense, the court agreed and decided not to read that instruction, although the court did give the aiding and abetting instruction. The prosecutor noted that reference to that instruction had already been made during argument. The court then proceeded to instruct the jury that "If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions."

The jury verdicts themselves reveal the prosecutor's argument had no effect. The jury was not presented with a felony-murder theory of guilt. Where the record of conviction shows no jury instructions were given regarding felony murder or the natural and probable consequences doctrine, a petitioner is ineligible for relief as a matter of law. (*People v. Daniel* (2020) 57 Cal.App.5th 666, 677.) Further, the jury found defendant personally used a firearm in convicting him of second degree murder, so it found defendant was the actual killer of Cowperthwaite, rendering him ineligible for resentencing.[2]

As to the attempted murder counts, defendant is also statutorily ineligible for resentencing, even after the amendments to sections 188 and 189. In each count convicting him of attempted murder, the jury was instructed and necessarily determined that defendant harbored the specific intent to kill; it was not instructed on the natural and probable consequences doctrine. As such, his attempted murder convictions were not based on the felony-murder doctrine or under the natural and probable consequences doctrine.

---

[2] Although our conclusion is that defendant was ineligible because the jury was not presented with a felony-murder theory, due to defendant's argument about the possibility that the jury considered defendant's guilt using the natural and probable consequences theory, we note that, in the abstract, the jury's apparent finding that defendant was the actual killer is not dispositive. (See *People v. Jones* (2003) 30 Cal.4th 1084, 1120) Nevertheless, taken together with the fact Martinez was the only defendant named in the count, the findings and verdicts establish as a matter of law that at a minimum, defendant was a major participant who acted with reckless indifference to human life, even if the jury had credited the prosecutor's argument. (See *People v. Wilson* (2023) 14 Cal.5th 839, 875.) Thus, even after the amended provisions of sections 188 and 189, defendant was ineligible for resentencing on the murder of Cowperthwaite. (*People v. Garcia* (2022) 82 Cal.App.5th 956, 973.)

11

In reaching our conclusion on this issue, we are guided by the California Supreme Court's recent opinion in *People v. Curiel* (Nov. 27, 2023, S272238) ___Cal.5th___ [2023 Cal. LEXIS 6622] (*Curiel*).)  In that case, the Supreme Court addressed the question of whether the jury's finding of "intent to kill" in the gang-murder special circumstance was entitled to preclusive effect and Curiel was bound by that finding.  (*Id.* at pp. *32-33.) In that case, however, the court went on to hold that the jury's gang-murder verdicts, viewed in light of the instructions given to the jury, may have established an intent to kill, but did not show the jury necessarily made factual findings covering the elements of mens rea and actus reus.  Thus, it concluded the trial court could not reject Curiel's prima facie showing on this basis.

In *Curiel,* the jury instructions included an instruction on the natural and probable consequences theory of aiding and abetting, which led to the Supreme Court's conclusion that, notwithstanding the finding of intent to kill included in the gang-murder special-circumstance finding, the trial court should not have concluded Curiel failed to establish a prima facie case.  Here, there were no instructions on felony murder or the natural and probable consequences doctrine, so the only theory of liability on count two (the only count for which he was not alleged to be the actual perpetrator) was that he actually aided and abetted the shooter of that victim.

Instead, in this case, the record of conviction demonstrated that defendant was convicted of murder and attempted murder either as a direct perpetrator or a direct aider and abettor, and not under the natural and probable consequences doctrine, or indeed any

12

theory under which malice was imputed to him based solely on his participation in a crime. (See *People v. Cortes* (2022) 75 Cal.App.5th 198, 204.) The fact the prosecutor had addressed a portion of his closing argument to the natural and probable consequences doctrine does not compel a different result because the trial court advised the jury that counsel's arguments were not evidence and directed the jury to follow the instructions given by the court even if counsel's comments conflicted with those instructions or the jury disagreed with the court's instructions. As was the case in *Cortes,* "[n]othing in the charges, the instructions, or the balance of the trial permitted the jury to find [defendant] guilty on a theory other than direct aiding and abetting or liability as a perpetrator of murder and attempted murder." (*Id*. at pp. 205-206.)

The trial court correctly determined defendant had failed to make a prima facie showing he was entitled to relief under section 1172.6.

2. *Defendant Was Not Deprived of Effective Assistance of Counsel*

Defendant argues he was deprived of effective assistance of counsel at the hearing to determine if he had made a prima facie showing he was entitled to relief. He therefore asserts he is entitled to a reversal with directions to order the issuance of an order to show cause for an evidentiary hearing on the petition. We disagree.

A claim that counsel's assistance was so defective as to require reversal has two components. First, the defendant must show that counsel's performance was deficient. Second, defendant must show that the deficient performance was prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)

13

Unlike at a trial, at the prima facie stage, there is no constitutional right to counsel under section 1172.6, subdivision (c), and "the right to counsel at that point in the proceedings is purely statutory." (*People v. Delgadillo* (2022) 14 Cal.5th 216, 227.) This is because "There is no unconditional state or federal constitutional right to counsel to pursue collateral relief from a judgment of conviction." (*Lewis, supra*, 11 Cal.5th at p. 972; see also *Delgadillo,* at p. 227, quoting *Lewis*.) Nevertheless, because we assume the Legislature did not intend to create a " 'hollow right,' " we must also assume the statutory right to competent representation "must include the right to seek review of claims of incompetence of counsel." (*In re A.R.* (2021) 11 Cal.5th 234, 248, citing *In re Kristin H*. (1996) 46 Cal.App.4th 1635, 1662, 1660 [statutory right to counsel in dependency proceedings requires competent representation].) Therefore, once counsel is appointed, a criminal defendant is entitled to competent counsel.

That said, counsel is not ineffective for failing to make an argument that wholly lacks merit. (See, e.g., *People v. Solomon* (2010) 49 Cal.4th 792, 843, fn. 24; *People v. Cudjo* (1993) 6 Cal.4th 585, 616.) Similarly, counsel's good faith assessment that no arguable issue exists justifying an appeal from the denial of a petition under section 1172.6 is also not ineffective. Competent counsel would be aware that a person convicted as the actual killer is ineligible for relief, and that convictions for attempted murder also preclude findings of ineligibility. Because defendant's convictions rendered him ineligible for relief, any argument by counsel would have been futile. Counsel was not required to make such futile arguments and was not ineffective for failing to raise them. (*People v.*

*Jones* (2010) 186 Cal.App.4th 216, 234-235 [to establish ineffective assistance of counsel, defendant must show "counsel's representation 'fell below an objective standard of reasonableness,'" and "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'"].)

Defendant's right to effective assistance of counsel was not violated.

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
                                                           P. J.

I concur:


CODRINGTON _____
                         J.

[*People v. Salvador Mendoza Martinez*, E080278]

MENETREZ, J., Concurring.

    A jury convicted defendant Salvador Mendoza Martinez of murder and attempted murder. The jury was not instructed on felony murder, the natural and probable consequences doctrine, or any other theory of imputed malice. Martinez is consequently ineligible for relief under Penal Code section 1172.6. It does not matter that the prosecutor briefly relied on the natural and probable consequences doctrine in closing argument. The jury was instructed that the court's instructions control over any conflicting arguments by the attorneys, and we presume "that the jury properly performed its duty." (*People v. Cortes* (2022) 75 Cal.App.5th 198, 206.) For all of these reasons, I concur in the judgment.

MENETREZ      
J.

1